UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

DR. TAREK EL-BAWAB                                                           PLAINTIFF

VS.                                                    CIVIL ACTION NO. 3:11cv553-DPJ-FKB

JACKSON STATE UNIVERSITY                                                     DEFENDANT

ORDER

This employment-discrimination case involves issues of alleged national-origin

discrimination and retaliation.  It is now before the Court on Defendant Jackson State

University's Motion for Summary Judgment [59].  Plaintiff has responded [69] in opposition.

The Court, having considered the memoranda and submissions of the parties, along with the

pertinent authorities, finds that Defendant's motion [59] should be granted in part but otherwise

denied.

I.        Facts and Procedural History

Defendant Jackson State University (JSU) hired Plaintiff Dr. Tarek El-Bawab in August

2005 as an Associate Professor in the Department of Computer Engineering.  That department is

part of the College of Science, Engineering, and Technology (CSET), which is a sub-college

within JSU.  El-Bawab is Egyptian and his Department Chair, Dr. Mahmoud Manzoul, is

apparently of Sudanese decent.

In 2009, El-Bawab applied for a promotion, but the application was denied as being

premature.  A year later in fall 2010, El-Bawab submitted another application for tenure and

promotion to full professor, which was accepted for consideration.  The JSU tenure and

promotion system outlines various criteria that factor into these decisions.  Additionally, as a

professor in the computer engineering department in CSET, El-Bawab was required to comply

with the CSET Supplemental Promotion Criteria.  And generally speaking, those supplemental criteria required an applicant for promotion to demonstrate satisfaction of a detailed grants requirement, which now forms the basis of this dispute.

Pursuant to JSU policy, El-Bawab's application was considered by several committees and officials.  First, a departmental committee composed of his peers recommended that El-Bawab receive tenure, but did not recommend promotion to full professor because he lacked sufficient grants.  As department chair, Manzoul rejected the committee's findings and recommended neither tenure nor promotion because of a "lack of funded grants/contracts." Def.'s Mot. [59] Ex. M.  At the next stage, the College Promotion and Tenure Committee considered El-Bawab's application and likewise recommended neither tenure nor promotion based on El-Bawab's lack of grant activity.  The CSET dean disagreed with the college committee's findings and recommended El-Bawab for tenure but not for promotion based on grantsmanship.  The university's provost also recommended tenure but not promotion and disapprovingly noted El-Bawab's grants activity.  Finally on April 13, 2011, JSU's president accepted the provost's recommendation and granted El-Bawab tenure but denied him promotion to full professor.  El-Bawab remains employed with JSU as an associate professor.

While this lengthy review process was ongoing, El-Bawab became dissatisfied with the intermediate decisions and filed an internal JSU grievance on November 4, 2010.  In it, El-Bawab generally asserted that the promotion process suffered from double-standards and that he had been subjected to discriminatory treatment—although the grievance fails to specify the form of discrimination he suffered.  El-Bawab's grievance was eventually rejected for apparent procedural reasons and as a result it failed to escalate to JSU's president for review.  El-Bawab

2

does, however, claim to have emailed the president on April 8, 2011, complaining of discriminatory treatment in the tenure and promotion process and informing her of the EEOC charge of discrimination he filed one day earlier on April 7, 2011.

After El-Bawab amended that charge on May 12, 2011, the EEOC issued El-Bawab a right-to-sue letter on June 1, 2011, and he filed this lawsuit on August 29, 2011. In the Complaint [1], El-Bawab asserts claims under 42 U.S.C. §§ 1981 and 1983, the equal-protection clauses of the United States and Mississippi constitutions, unidentified state-law claims, and claims for discriminatory and retaliatory treatment under Title VII. He also requests punitive damages. Thereafter, JSU filed its summary-judgment motion seeking dismissal of El-Bawab's claims for procedural and substantive reasons. That motion has been fully briefed. The Court has personal and subject-matter jurisdiction and is prepared to rule.

II.     Standard

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing

that there is a genuine issue for trial.'" *Id.* at 324 (citation omitted). Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075. When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (citations omitted).

"Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that 'the better course would be to proceed to a full trial.'" *Firman v. Life Ins. Co. of N. Am.*, 684 F.3d 533, 538 (5th Cir. 2012) (citing *Anderson v. Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)); *see also* 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2728, at 526–27 (3d ed. 1998) (suggesting discretion should be exercised sparingly in light of *Celotex Corp.*, 477 U.S. at 327). Here, the record establishes JSU's right to summary judgment on many claims, and those will be dismissed. But the record is less clear with respect to the core claims of national-origin discrimination and retaliation. In many instances, the parties offer snippets from the evidence leaving an incomplete picture. As shown below, it appears that questions of fact exist, and due to the uncertainty that remains the Court will exercise discretion and proceed to trial on those claims.

4

III.     Analysis

    A.     Conceded and Abandoned Claims

El-Bawab concedes that his § 1981, § 1983, and Fourteenth Amendment equal-protection

claims should be dismissed under Eleventh Amendment sovereign immunity.  Further, he

conceded his Title VII religious-discrimination claim in his deposition and has not pursued it in

his memorandum brief.  El-Bawab Dep. at 80–81.  Those claims are therefore dismissed.

Also abandoned are Plaintiff's Title VII claims based on race and color.  El-Bawab identifies

himself as a white Egyptian.  And while he raised Title VII race and color claims in his

Complaint, his summary-judgment response focuses on national origin while ignoring race and

color.  *See* Pl.'s Resp. [70] at 1.

    Finally, El-Bawab fails to address JSU's arguments that his equal-protection claim under

the Mississippi Constitution is barred by the Eleventh Amendment; that his state-law claims—to

the extent he has pleaded any—are barred for lack of notice under the Mississippi Torts Claims

Act; and that he may not recover punitive damages against a governmental entity under 42

U.S.C. § 1981a(b)(1).  The Court finds that JSU's arguments are meritorious and that the claims

were otherwise abandoned.  *See Black*, 461 F.3d at 588 n.1 ("[Plaintiff's] failure to pursue this

claim beyond [the] complaint constituted abandonment.").[1]

---

    [1]Any state-law claims against JSU would also be barred by Eleventh Amendment
sovereign immunity because the "MTCA also preserves all immunities granted by the Eleventh
Amendment of the United States Constitution."  *Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 594
(5th Cir. 2006) (citing Miss. Code Ann. § 11-46-5(4)).

To remedy his sovereign immunity issues, El-Bawab requests within his Response leave to amend his complaint to name individual JSU employees.  This request is improper for three reasons.  First, it fails to comply with Local Uniform Civil Rule 7(b)(3)(C), which states:  "A response to a motion may not include a counter-motion in the same document."  Second, even if raised in a motion, the motion would be untimely because the deadline to amend the pleadings passed nearly a year before this request.  Finally, El-Bawab's request is conclusory and fails to identify which JSU employees he desires to sue or for what.

B.      Exhaustion

JSU asserts that El-Bawab has failed to exhaust his 2009 and 2012 promotion denials, as well as various claims involving wages and difficult work assignments.  A Title VII plaintiff must file an EEOC charge "within one hundred and eighty days after the alleged unlawful employment practice occurred . . . ."  42 U.S.C. § 2000e-5(e)(1).  This limitations period "begins to run from the time the complainant knows or reasonably should have known that the challenged act has occurred."  *Ramirez v. City of San Antonio*, 312 F.3d 178, 181 (5th Cir. 2002) (citations and quotations omitted).  "Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire" occurring outside of this 180-day window are "untimely filed and no longer actionable."  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114–15 (2002).  But "[u]nder the continuing violations doctrine, a plaintiff may complain of otherwise time-barred discriminatory acts if it can be shown that the discrimination manifested itself over time, rather than in a series of discrete acts."  *Frank v. Xerox Corp.*, 347 F.3d 130, 136 (5th Cir. 2003) (citing *Huckabay v. Moore*, 142 F.3d 233, 238–39 (5th Cir. 1998)); *see also Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 352 (5th Cir. 2001).

6

JSU argues that El-Bawab failed to present his wage claims to the EEOC in his April 7, 2011 charge.  It is not entirely clear that El-Bawab has pursued a claim for wage-based discrimination.  *See* Pl.'s Compl. [1] ¶¶ 9, 13.  But to the extent he did, El-Bawab has failed to respond to this aspect of JSU's argument, which appears meritorious.  The wage-related claims are dismissed.  *See Black*, 461 F.3d at 588 n.1.

JSU makes the same argument as to the 2012 promotion-denial claim, but El-Bawab does address that issue, asserting that it grows out of his 2011 EEOC charge.  Whether it does is doubtful, but these events are not reflected in El-Bawab's Complaint, which was filed after JSU denied promotion in 2012.  *See Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) ("A claim which is not raised in the complaint, but, rather, is raised only in response to a motion for summary judgment is not properly before the court." (citation omitted)).

As to the 2009-promotion-denial claim, El-Bawab included the claim in his 2011 EEOC charge, which he filed more than 180 days after the 2009 promotion incident.  Though El-Bawab argues that the claim is timely under the continuing violations doctrine, this is precisely the type of "discrete discriminatory act" that will be time-barred absent a timely filed charge.  *Goring v. Bd. of Supervisors of La. State Univ. Agr. & Mech. Coll.*, 414 F. App'x 630, 633 (5th Cir. 2011) (citing *Morgan*, 536 U.S. at 113).

El-Bawab appears to pursue the same theory for various work-assignment claims that were not presented in a timely EEOC charge of discrimination.  He reasons that those acts diminished his ability to earn the academic distinctions helpful, if not necessary, to his 2011

promotion application.[2]  But this relational argument cannot transform these otherwise discrete acts into continuing violations.  *Celestine*, 266 F.3d at 352 ("[The plaintiff] must show an organized scheme leading to and including a present violation, such that it is the cumulative effect of the discriminatory practice, rather than any discrete occurrence, that gives rise to the cause of action." (citation and quotations omitted)).  El-Bawab has not specifically asserted that any of these adverse-assignments occurred within 180 days of his EEOC charge, nor has the Court located record evidence suggesting otherwise.[3]  So while events occurring before the 180-day window may be relevant to the exhausted claims, they are barred as separate causes of action. This leaves the retaliation and 2011 promotion claims.

C.    2011 Promotion-Discrimination Claim

According to El-Bawab, JSU denied his application for promotion from associate to full professor in 2011 because of his national origin in violation of Title VII.  42 U.S.C. § 2000e-2(a). This discrimination case, which is premised upon circumstantial evidence, proceeds under the familiar *McDonnell Douglas* burden-shifting framework.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

Under that burden-shifting framework, the plaintiff must first establish a prima facie case by showing:  (1) he is a member of a protected class; (2) he was qualified for the position sought;

_____

[2]The assignments—which seemed comparable to those of Dr. Ali Humos, one of his comparators—were likely not ultimate employment decisions.  *See Ellis v. Principi*, 246 F. App'x 867, 870 (5th Cir. 2007).

[3]"Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment."  *Am. Family Life Assur. Co. of Columbus v. Biles*, 714 F.3d 887, 896 (5th Cir. 2013) (citations and quotations omitted).

(3) he was subject to an adverse employment action; and (4) he was treated less favorably than a similarly situated employee who is not a member of his protected class. *Hypolite v. City of Hous.*, 493 F. App'x 597, 602 (5th Cir. 2012) (citing *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007)); *see also Alvarado v. Tex. Rangers*, 492 F.3d 605, 611 (5th Cir. 2007). If the plaintiff is able to show a prima facie case, then the burden shifts to the defendant to produce a legitimate, nondiscriminatory reason for the employment action. *Autry v. Fort Bend Indep. Sch. Dist.*, 704 F.3d 344, 347 (5th Cir. 2013). And "[i]f the defendant satisfies this burden, the onus shifts back to the plaintiff to prove either that the defendant's articulated reason is merely a pretext for race discrimination (the pretext alternative), or that the defendant's reason, while true, is only one of the reasons for its decision, and another 'motivating factor' is the plaintiff's protected characteristic (the mixed-motives alternative)." *Id.* (citation omitted).

       1.      Prima Facie Case

      It is undisputed that El-Bawab was a member of a protected class and that JSU's denial of his application for promotion was an adverse employment action. JSU contends, however, that El-Bawab's prima facie case fails on the second and fourth prongs because he was unqualified for promotion to full professor and cannot proffer a similarly-situated comparator.

       a.      Qualifications

      "An employer may establish job requirements, and rely on them in arguing that a prima facie case is not established because the employee is not 'qualified.'" *Johnson v. Louisiana*, 351 F.3d 616, 622 (5th Cir. 2003) (citation omitted). But those qualifications must be objective ones. *Id.* An employer may not "'utilize wholly subjective standards by which to judge its employees' qualifications and then plead lack of qualification when its promotion process . . . is challenged

as discriminatory.'" *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 681 (5th Cir. 2001) (quoting *Crawford v. W. Elec. Co.*, 614 F.2d 1300, 1315 (5th Cir. 1980)).   Additionally, "[a]llowing an employer to point to objective requirements in arguing that a plaintiff is unqualified, even though the requirements were not applied to other employees, would subvert the intent of Title VII and *McDonnell Douglas*." *Johnson*, 351 F.3d at 624.   In those cases a plaintiff may overcome a lack of objective qualifications at the prima facie stage if he can establish that the employer applied an objective requirement subjectively by promoting employees lacking the qualification. *Id.* at 624–25 ("[H]iring an employee who does not meet the company's objective requirements is basically a subjective determination:  the employee can do the job despite the fact that she does not meet the technical requirements.").

In order to qualify for promotion within CSET, a sub-college of JSU, a professor must satisfy the CSET Supplemental Promotion Criteria for the requested position.  These criteria, which apply to promotion but not tenure, are restricted to the "area of Grants, Contracts, and Cooperative Agreements."  Def.'s Mot. [59] Ex. J, CSET Promotion & Tenure Procedures at 4. Under CSET's grants requirement, an applicant seeking promotion from associate to full professor must demonstrate since the last promotion either "[t]hree (3) externally funded research or training grants" or " [s]ix (6) submitted grants for external funding, 33% of which are funded." *Id.*, Ex. K, CSET Promotion Criteria at 2.  This includes grants that are "individual or collaborative as PI or Co-PI" but excludes from consideration "[t]ravel awards or equipment donations."  *Id.* at 2–3 & n.2.

In his application for promotion, El-Bawab collectively listed ten funded grants and unfunded but submitted grants.  Def.'s Mot. [59] Ex. AA, Application Excerpts at 3–4.  He listed

another three grants in his second addendum submitted on March 4, 2011.  *Id.* at 6–7.  El-Bawab

served as PI on some but not all of those grants and was listed as "key personnel" on another.

*Id.*; El-Bawab Dep. at 232–55 (discussing entries on application and addenda).  JSU asserts that

El-Bawab was nonetheless unqualified because it has a policy, partially unwritten, of not

counting grants in which the applicant was neither the PI nor Co-PI, grants unrelated to JSU, and

grants of equipment and travel donations.

      While it seems from the record that El-Bawab would not satisfy the objective

requirements as further defined by JSU, JSU's position is complicated by El-Bawab's claim that

JSU did not apply these objective requirements evenly.  *See Johnson*, 351 F.3d at 624–25

(holding that a plaintiff may overcome lack of objective qualifications at the prima facie stage if

he can establish employer applied objective requirement subjectively by promoting employees

lacking the qualification).  According to El-Bawab, JSU ignored its objective requirements when

it promoted Dr. Chia-Pin Liu and Dr. Ali Humos and therefore applied a subjective test.  The

Court finds that a question of fact exists on this point which is addressed more thoroughly with

respect to the disparate-treatment prong of the prima facie case.

      b.     Disparate Treatment of Similarly Situated Comparators

      El-Bawab claims that JSU treated Liu and Humos, neither of whom are from Egypt, more

favorably with respect to their grantsmanship.  Liu and Humos both sought promotion from

assistant professor to associate professor around the same time El-Bawab applied for promotion.

To obtain those promotions, Liu and Humos were required to meet the same type of grant

requirements El-Bawab faced in his quest for full-professor status, but the number of grants was

reduced.  For example, professors seeking promotion from assistant to associate professor must

demonstrate since last promotion either "[t]wo (2) externally funded research and/or training grants" or "[f]our (4) submitted grants for external funding, 25% of which are funded," whereas an applicant seeking promotion from associate to full professor must demonstrate since the last promotion either "[t]hree (3) externally funded research or training grants" or " [s]ix (6) submitted grants for external funding, 33% of which are funded."  Def.'s Mot. [59] Ex. K, CSET Promotion Criteria at 2.

On the record before the Court, a question exists whether either Liu or Humos met the grant requirements.  The record also indicates that many of the individuals involved in JSU's multi-layered promotion process found that Humos was not qualified due to lack of grants.  Yet JSU seems to concede that he was promoted and argues that he was qualified.  But the reason he was found qualified is not entirely clear from the record evidence, and it appears that some were willing to accept his travel and equipment grants.  Based on this, the Court concludes that fact questions remain as to whether the standards were applied equally to El-Bawab, Liu, and Humos.[4]

---

[4]This is perhaps the most confusing portion of the record.  For example, it seems clear that Humos, like El-Bawab, faced resistance to promotion for lack of sufficient grant activity. On December 3, 2011, "The consensus of the [College] Committee was that Dr. Humos did not meet the minimum requirements and expectations in the area of Research, Scholarly and Creative Activities for promotion to Associate Professor."  Pl.'s Resp. [69] Ex. 16, Humos Review Forms at 2.  His dean agreed with that assessment the year before.  Id. at 3.  JSU contends, however, that "when he was promoted to associate professor, he satisfied the grantsmanship requirement . . . ." Def.'s Reply [74] at 8.  To support that argument, JSU cites a one page exhibit that lists Humos's grants, but that document is undated, and it is not clear why he was eventually considered qualified when he was previously found unqualified by others in the process.  Id., Ex. E, Humos Application Excerpt.  Indeed it is not clear when he was even promoted.  While the court made every effort to the consider the record as a whole, it was under no duty to search for uncited materials supporting a party's position.

JSU urges the court to ignore Liu and Humos, claiming that they are inadequate comparators for an associate professor like El-Bawab because of the difference in rank.  Under the similarly-situated analysis, "an employee who proffers a fellow employee as a comparator [must] demonstrate that the employment actions at issue were taken 'under nearly identical circumstances.'"  *Lee v. Kan. City S. Ry.*, 574 F.3d 253, 260 (5th Cir. 2009) (quoting *Little v. Republic Ref. Co.*, 924 F.2d 93, 97 (5th Cir. 1991)).  Although nearly identical is not equivalent with identical, "[e]mployees with different supervisors, who work for different divisions," "who were the subject of adverse employment actions too remote in time from that taken against the plaintiff," and "who have different work responsibilities" generally are not similarly situated to one another.  *Id.* at 259–60.  And if a difference between the plaintiff and the comparator "'*accounts for* the difference in treatment received from the employer,' the employees are not similarly situated for the purposes of an employment discrimination analysis."  *Id.* at 260 (quoting *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 221 (5th Cir. 2001)).

Significantly, the similarly-situated inquiry is not mechanical, and the Court must consider the functional aspects of these positions.  *See Player v. Kan. City S. Ry.*, 496 F. App'x 479, 482 (5th Cir. 2012) ("We base our decision not on the individuals' different job titles but rather on the record evidence indicating that they did not perform the same functions . . . ."); *see also Lee*, 574 F.3d at 261 ("We emphasize today that this Circuit's 'nearly identical' standard is not equivalent to 'identical.'. . .  [W]e focus on the totality of the circumstances . . . ."); *Dortch v. Mem'l Herman Healthcare Sys.–Sw.*, 525 F. Supp. 2d 849, 863 (S.D. Tex. 2007) ("[T]he 'similarly situated' inquiry looks to the totality of the circumstances in determining whether an employee is an appropriate 'comparator.'" (citing *Wyvill v. United Cos. Life Ins. Co.*, 212 F.3d

296, 305 (5th Cir. 2000))); *see also Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344,

352 (6th Cir. 1998) (noting a Title VII plaintiff is "simply required to prove that all of the

*relevant* aspects of his employment situation were 'nearly identical' to those of [the non-

minority's] employment situation" (citation and quotations omitted)).

Although the assistant-professor position is clearly a lower rank, there is no suggestion

that assistant and associate professors serve functionally dissimilar roles at JSU.  Further, the

respective qualifications for promotion from either position are exceedingly similar, differing in

the quantity, not the quality, of required grants.  *See* Def.'s Mot. [59] Ex. K, CSET Promotion

Criteria at 2.  It also appears that the promotion decisions passed through the same officials and

committees, and there is no indication that the difference between an assistant and associate

professor "accounts for" any differences in the way JSU views qualified grants.  *Lee*, 574 F.3d at

260.  Such differences may exist, but they have not been presented.  As such, the Court

concludes that questions of fact remain regarding the existence of disparate treatment related to

Liu and Humos.[5]

2.      Legitimate, Nondiscriminatory Reason and Pretext

As its legitimate, nondiscriminatory reason for refusing El-Bawab's promotion to full

professor, JSU points to El-Bawab's qualifications, specifically his grants.  Relying on *Krystek v.*

---

[5]El-Bawab also points to Dr. Gordon Skelton, who was promoted to full professor by
JSU.  Skelton does not share El-Bawab's national origin, and the two professors sought
promotion between the same job titles and rank: associate professor to full professor.  According
to El-Bawab, Skelton did not satisfy the objective publication requirements but was nevertheless
promoted.  In light of Liu and Humos, the Court will not fully explore that claim and whether it
is sufficiently similar, but there does appear to be a question whether Skelton was qualified.

*University of Southern Mississippi*, El-Bawab again responds by arguing that JSU treated others more favorably and therefore its reason is pretextual.  164 F.3d 251 (5th Cir. 1999).

"A plaintiff may establish pretext by showing that a discriminatory motive more likely motivated her employer's decision, such as through evidence of disparate treatment, or that her employer's explanation is unworthy of credence."  *Haire v. Bd. of Supervisors of La. State Univ. Agric. & Mech. Coll.*, — F.3d —, No. 12-30290, 2013 WL 2211656, at *3 (5th Cir. May 21, 2013) (citing *Wallace*, 271 F.3d at 220).  Given the finding that the Liu and Humos promotions create a question of fact on disparate treatment, the Court likewise finds a question at this stage of the analysis.

The Court readily admits that this is a close call.  Perhaps with a clearer record, the contrast between El-Bawab and the comparators might be more apparent.  But as things stand, the parties offered only portions of the promotion applications and histories, leaving the Court with too many questions regarding the decisions that were made and when they occurred.  With this uneven footing, the Court concludes that dismissal is inappropriate.  *See Firman*, 684 F.3d at 538 ("Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that 'the better course would be to proceed to a full trial.'") (citation omitted)).

D.      Retaliation Claim

Title VII retaliation claims based on circumstantial evidence proceed under the similar *McDonnell Douglas* burden-shifting framework.  *McCoy*, 492 F.3d at 556.  The plaintiff must first establish a prima facie case by showing:  "(1) [he] participated in an activity protected by Title VII; (2) [his] employer took an adverse employment action against [him]; and (3) a causal

connection exists between the protected activity and the materially adverse action." *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 484 (5th Cir. 2008) (citing *McCoy*, 492 F.3d at 557). Upon establishing a prima facie case, the burden shifts to the employer to produce a legitimate, nonretaliatory reason for the employment action. *Id.* "If the employer meets this burden of production, the plaintiff then bears the burden of proving that the employer's reason is a pretext for the actual retaliatory reason." *Id.* (citing *McCoy*, 492 F.3d at 557); *see also Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013) ("Title VII retaliation claims must be proved according to traditional principles of but-for causation . . . . This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer."). El-Bawab claims that JSU denied his promotion in 2011 in retaliation for his complaints of harassment and discrimination. JSU disputes whether El-Bawab can state a prima facie case, both on the protected activity and causation prongs.

   1.  Prima Facie Case

     a.  Protected Activity

  A threshold issue exists whether Plaintiff engaged in protected activity. El-Bawab offers two possible candidates—his November 2010 grievance and his April 8, 2011 email to JSU President Carolyn Meyers. According to JSU, neither constitutes protected activity, but the Court concludes that the later effort creates a question of fact on this element of the prima facie case.

  Protected activity must reference conduct "made an unlawful employment practice by" Title VII. 42 U.S.C. § 2000e-3(a). "Magic words are not required, but protected opposition must at least alert an employer to the employee's reasonable belief that unlawful discrimination is at

16

issue." *Brown v. United Parcel Serv., Inc.*, 406 F. App'x 837, 840 (5th Cir. 2010) (citations

omitted). "Title VII protects opposition only when the plaintiff opposes conduct Title VII

prohibits. As often stated, Title VII 'does not set forth a general civility code for the American

workplace.'" *Wynn v. Miss. Dep't of Human Servs.*, No. 3:09-cv-717-DPJ-FKB, 2011 WL

3423142, at *6 (S.D. Miss. Aug. 4, 2011) (citing *Burlington N. & Santa Fe Ry. v. White*, 548

U.S. 53, 68 (2006)) (some quotations omitted). It follows that the Fifth Circuit has "consistently

held that a vague complaint, without any reference to an unlawful employment practice under

Title VII, does not constitute protected activity." *Davis v. Dallas Indep. Sch. Dist.*, 448 F. App'x

485, 493 (5th Cir. 2011) (collecting cases and holding that complaints of harassment did not

constitute protected activity); *see also Brown*, 406 F. App'x at 840 (holding that undefined claim

of "discrimination" was not protected activity).

Looking then to the activity in this case, El-Bawab's initial grievance used the word

"discrimination," but it never suggested that the alleged discrimination was based on a protected

characteristic. And given the fact that his purported comparators were multi-national and, in

some cases, of El-Bawab's same race/color, it is not apparent from the grievance that the

discrimination related to an act proscribed by Title VII. There is certainly no suggestion in this

grievance that JSU discriminated against El-Bawab because he is Egyptian. El-Bawab never

directly responds to JSU's argument that the initial grievance was not protected activity, and the

Court concludes that it was not.

The April 8, 2011 email is a different matter because in it El-Bawab informs JSU that he

has filed an EEOC charge of discrimination, which is itself a protected activity. JSU first

addresses this email by claiming that it was not produced in discovery, constitutes hearsay, and

17

was never authenticated.  Starting with the discovery issue, it appears that the document should

have been produced if it was not, but there has been no motion seeking discovery sanctions and

no separately filed motion to strike it.  The argument appears instead in a reply memorandum,

and Plaintiff has not, therefore, been called upon to explain why it was not produced at an earlier

date.  Discovery can be supplemented, and in this case the document was produced well in

advance of trial.  So based on this record the Court will not forego consideration based on this

underdeveloped argument.

The later two arguments are easily addressed.  First, the email was offered to show notice

and not the truth of the matter asserted.  It is not therefore hearsay under Federal Rule of

Evidence 801(C)(2).  As for authentication, the Court first notes that JSU failed to authenticate

most of its exhibits, but this oversight is no longer fatal to either party.  Before the amendments

to Rule 56, the Fifth Circuit regularly held that "unauthenticated documents are improper as

summary judgment evidence."  *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994).  But the

amendments to Rule 56 create a new test.  Rule 56(c)(1)(B) now states:

> A party asserting that a fact cannot be or is genuinely disputed must support the
> assertion by:
>
> > (B) showing that the materials cited do not establish the absence or
> > presence of a genuine dispute, or that an adverse party *cannot produce*
> > admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1)(B) (emphasis added).  When a party has failed to offer evidence in an

admissible format, the opposing party may object pursuant to Rule 56(c)(2), which states that

"[a] party may object that the material cited to support or dispute a fact *cannot be presented in a*

*form* that would be admissible in evidence." (emphasis added). The commentary explains the new procedure:

> Subdivision (c)(2) provides that a party may object that material cited to support or dispute a fact *cannot* be presented in a form that would be admissible in evidence. The objection functions much as an objection at trial, adjusted for the pretrial setting. The burden is on the proponent to show that the material is admissible as presented *or to explain the admissible form that is anticipated*.

Fed. R. Civ. Pro. 56, cmt. (emphasis added). In this case, JSU has not suggested that the exhibit cannot be presented in an admissible form, so this argument likewise fails. In sum, the November 2010 grievance was not protected activity, but the April 8, 2011 email was.

> b.   Causation

Once the protected activity is identified, the remaining issues become murky. According to JSU, the claim fails for lack of causation at the prima facie stage. Its argument has two components. First, JSU argues that temporal proximity is not enough to show causation. Second, it contends that there is no proof the decisionmaker knew about the alleged protected activity. Both issues raise questions of fact.

Starting with temporal proximity, JSU argues that causation is lacking at the prima facie stage because "[i]t is the rule in the Fifth Circuit that temporal proximity by itself is never enough to establish causation." Def.'s Mem. [60] at 16. While similar statements have been made with respect to a plaintiff's ultimate burden, it is not so at the prima facie stage. *See Evans v. City of Hous.*, 246 F.3d 344, 354 (5th Cir. 2001) ("Close timing between an employee's protected activity and an adverse action against [him] may provide the 'causal connection' required to make out a *prima facie* case of retaliation." (citation and quotations omitted)). And if JSU is correct that its president, Carolyn Meyers, was the final decisionmaker, then it appears

from the record that the April 8, 2011 email was sent just days before she decided to deny promotion.[6]  *See* Def.'s Mot. [59] Ex. Q, Meyers Letter.  Assuming for the moment that Meyers read the email, this near immediate proximity satisfies the causation element at the prima facie stage.

The causation question, then, turns on whether Meyers knew about the protected activity.  If not, then causation would be lacking.  Before El-Bawab produced the April 8, 2011 email, JSU contended that Meyers never knew about the earlier grievance—which JSU correctly argued was not protected activity any way.  But the April 8, 2011 email plainly references the EEOC charge.  JSU therefore argued in reply that there was no evidence proving Meyer's received the email, though it offered no evidence suggesting that she did not.  The email itself is addressed to Meyers, and JSU has not suggested that the address is incorrect.  Nor does JSU suggest that it was sent after the decision was made.  When viewed in a light most favorable to the non-movant, the Court finds a question of fact on this point.  El-Bawab has therefore stated a prima facie case of retaliation based on the April 8, 2011 email.

2.      Legitimate, Non-Retaliatory Reason and Pretext

Moving past the prima facie stage, JSU has produced a legitimate, non-retaliatory reason for the decision:  El-Bawab's lack of grants.  But again, El-Bawab points to disparate treatment of his promotion application as compared to those of Liu and Humos.  As stated before, the record is more than a little cloudy, but the Court finds that a question exists as to whether the comparators were treated more favorably.  *See Laxton*, 333 F.3d at 578 (holding that pretext can

---

[6]The record might suggest that Meyers was not the decisionmaker, but JSU contends that she was so the Court will proceed under that assumption.

be established "through evidence of disparate treatment").  The Court would in any event exercise discretion and take the issue to trial.  *See Firman*, 684 F.3d at 538.

IV.    Conclusion

The Court has considered all issues raised by the parties, and those not expressly addressed herein would not change the result of this Order.  The Court therefore finds that Defendant's motion is granted with the exception of Plaintiff's Title VII national-origin and retaliation claims related to the 2011 promotion decision.

The parties are directed to contact the Court within 14 days of entry of this Order to schedule the pretrial conference and trial dates.

**SO ORDERED AND ADJUDGED** this the 26th day of July, 2013.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE

21